UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DEQUIAN VINCENT**　　　　　　　　　　　　　　　　　　**CIVIL ACTION**

**VERSUS**　　　　　　　　　　　　　　　　　　　　　　　　**No. 24-233**

**DUPRE BROTHERS CONSTRUCTION**
**COMPANY INC.**　　　　　　　　　　　　　　　　　　　　**SECTION I**

## ORDER & REASONS

Before this Court is defendant Dupre Brothers Construction Company, Inc.'s ("defendant") motion for partial summary judgement.[1] Plaintiff Dequian Vincent ("plaintiff") filed a response.[2] For the reasons that follow, the Court denies defendant's motion.

### I.　FACTUAL BACKGROUND

This case arises out of an accident that occurred on or about September 29, 2023, while plaintiff was employed as a deckhand on a vessel owned and operated by defendant.[3] Plaintiff's amended complaint states that he sustained injuries when he slipped and fell attempting to disembark from defendant's vessel.[4] These include injuries to his left knee and lumbar spine.[5]

Plaintiff has since been treated for "left knee pain, low back pain, lumbosacral strain, spondylosis of the lumbar region, spondylosis with radiculopathy of the

---

[1] R. Doc. No. 31.
[2] R. Doc. No. 33.
[3] R. Doc. No. 29, ¶¶ 4.1–4.3.
[4] *Id.* ¶ 4.3.
[5] *Id.*

lumbosacral region, and pars defect of lumbar spine."[6] As treatment for his knee, he "received a left knee joint injection of a solution containing kenalog and lidocaine for treatment of inflammation in his knee joint" as well as "superior medial, superior lateral, and inferior medial genicular nerve blocks in his knee."[7] To treat his back, plaintiff received "two lumbar epidural steroid injections to treat inflammation in his lumbar spine;" "L3, L4[,] and L5 lumbar medial branch nerve blocks[;] radiofrequency ablation of his lumbar facet medial branch nerves[;] and trigger point injections of 6 sites located at the lumbar paraspinal bilateral musculature."[8]

Among other claims in the amended complaint, plaintiff makes a claim for failure to pay maintenance and cure.[9] Plaintiff argues that defendant has breached its duty by terminating maintenance and cure payments after May 14, 2024.[10] Plaintiff maintains that he has not reached maximum medical improvement ("MMI").[11] He therefore seeks compensatory damages, punitive damages, and attorney's fees in connection with this claim.[12]

Defendant filed the present motion for partial summary judgment on July 23, 2024, arguing that plaintiff's request for punitive damages related to his claim for failure to pay maintenance and cure fails as a matter of law.[13] Defendant argues that

---

[6] R. Doc. No. 33-5, ¶ 6.
[7] *Id.* ¶ 7.
[8] *Id.*
[9] R. Doc. No. 29, ¶ 7.1.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] R. Doc. No. 31.

even if its termination of maintenance and cure was wrongful, it was not arbitrary and capricious and therefore cannot support a claim for punitive damages.[14] In support of this argument, defendant submits various documents, including a report by Dr. Kevin M. Watson ("Dr. Watson"), who reviewed plaintiff's medical records before defendant terminated payments.[15] Dr. Watson's report includes his opinions that plaintiff's back injury is not related to his workplace injury and that treatment has been ineffective at ending his back pain.[16] Dr. Watson also states that plaintiff's knee injury would be expected to resolve "over 3 months."[17] For both injuries, Dr. Watson's opinion is that plaintiff has reached MMI.[18] A decision to terminate payments after investigating and consulting with a physician, defendant argues, is not arbitrary and capricious.[19]

In response, plaintiff argues that genuine issues of fact exist as to whether defendant wrongfully denied maintenance and cure benefits and whether it did so arbitrarily and capriciously.[20] Plaintiff points to statements by Dr. Suneil Jolly ("Dr. Jolly") and Dr. Erik Davis ("Dr. Davis"), his treating physicians, in support.[21] Dr. Jolly's unsworn declaration states that plaintiff's injuries were most likely caused by his slip and fall and that his treatment is curative because it improves his physical

---

[14] R. Doc. No. 31-10, at 10–11.
[15] R. Doc. No. 31-9, at 1.
[16] *Id.* at 8.
[17] *Id.*
[18] *Id.*
[19] R. Doc. No. 31-10, at 7–8.
[20] R. Doc. No. 33, at 2.
[21] *Id.* at 11–15.

3

condition, eliminates or reduces his chronic pain, and allows faster recovery and cure of anatomical and symptomatic issues.[22] Dr. Davis is likewise of the opinion that plaintiff's treatment was most likely necessitated by the slip and fall.[23] Because defendant discontinued payments without unequivocal evidence that plaintiff had reached MMI and because there are competing medical opinions, plaintiff maintains that there are genuine issues of material fact as to whether defendant's denial of benefits was arbitrary and capricious.[24]

## II. STANDARDS OF LAW

### a. Summary Judgment

Summary judgment is proper when, after reviewing the materials in the record, a court determines that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no

---

[22] R. Doc. No. 33-5, ¶¶ 5, 8.
[23] R. Doc. No. 33-6, at 11.
[24] R. Doc. No. 33, at 19.

evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine dispute is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine dispute of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the nonmovant fails to meet its burden of showing a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255. If the nonmovant fails to meet its burden of showing a genuine dispute for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

### b. Maintenance and Cure

The obligation of a shipowner to provide maintenance and cure includes a duty to "provide a subsistence allowance and to pay for medical expenses actually incurred by the seaman" as well as a duty to "take all reasonable steps to ensure that the seaman, when he is injured or becomes ill, receives proper care and treatment." *Gaspard v. Taylor Diving & Salvage Co.*, 649 F.2d 372, 375 (5th Cir. 1981).

"Aside from gross misconduct or insubordination, . . . how [a seaman] sustains injury does not affect his right to maintenance and cure." *Farrell v. U.S.*, 336 U.S. 511, 516 (1949). A shipowner is permitted to investigate claims and request reasonable documentation before commencing payment. *McWilliams v. Texaco, Inc.*, 781 F.2d 514, 519–20 (5th Cir. 1986). However, entitlement to maintenance and cure is "not to be defeated by restrictive distinctions nor narrowly confined." *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962) (internal citations and quotations omitted).

A seaman is entitled to maintenance and cure benefits until he reaches MMI, which occurs "when it appears probable that further treatment will result in no betterment of the seaman's condition." *Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 79 (5th Cir. 1990) (quoting *Gaspard*, 649 F.2d at 374 n. 3) (internal quotations omitted). In other words, "where it appears that the seaman's condition is incurable, or that future treatment will merely relieve pain and suffering but not otherwise improve the seaman's physical condition, it is proper to declare that the point of [MMI] has been achieved." *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979). "The point of MMI is a medical determination, not a legal one. . . ." *Robinson*

*v. Ergon, Inc.*, No. CV 17-6906, 2018 WL 3368883, at *2 (E.D. La. July 10, 2018) (Barbier, J.) (citing *Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985) ("It is the medical, not the judicial, determination . . . that terminates the right to maintenance and cure.").

Treatment that is merely palliative, rather than curative, "is insufficient to demonstrate an entitlement to continued maintenance and cure." *Alario v. Offshore Serv. Vessels, L.L.C.*, 477 Fed. Appx. 186, 188 (5th Cir. 2012). Even when medical treatment improves "overall functioning," treatment is palliative in nature if it does not cure the underlying condition or change any structural problems. *See id.* at 187–88. For example, where scarring in the brain causes a seaman's epilepsy, medicine that controls the seizures is palliative and not curative because the scarring remains. *Stewart v. Waterman S. S. Corp.*, 288 F. Supp. 629, 633–35 (E.D. La. 1968) (Boyle, J.), *aff'd*, 409 F.2d 1045 (5th Cir. 1969).

"After a seaman has proved his initial entitlement to maintenance and cure, the burden shifts to the [shipowner] to prove that [MMI] has been reached." *Vaughn v. Am. Com. Barge Line, LLC*, 672 F. Supp. 3d 184, 189 (E.D. La. 2023) (Barbier, J.) (citing Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 6:33 (6th ed.). A medical determination of MMI sufficient "to terminate a seaman's right to maintenance and cure must be unequivocal." *Johnson*, 893 F.2d at 79. And "[w]hen there are ambiguities or doubts, they are resolved in favor of the seaman." *Vaughan*, 369 U.S. at 531.

7

Beyond liability for failure to pay maintenance and cure, a shipowner may also be liable for punitive damages if it "lacks a reasonable defense" for failure to pay and "has exhibited callousness and indifference to the seaman's plight." *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987). This higher level of fault has been described as "willful, callous, and persistent" or "arbitrary and capricious." *Id.* Whether a court describes this level of fault as "arbitrary and capricious" or by other terms, an award of punitive damages must be grounded in an element of bad faith. *Harper v. Zapata Off-Shore Co.*, 741 F.2d 87, 90 (5th Cir. 1984).

The Fifth Circuit has stated that employer conduct may warrant an award of punitive damages, for example, when the shipowner conducted an "impermissibly lax" investigation into a seaman's claims,[25] delayed payments beyond a reasonable time to investigate,[26] or refused to reinstate maintenance and cure after a subsequent diagnosis.[27] "Absent an unequivocal justification to terminate a seaman's maintenance and cure because a seaman has reached [MMI], a [shipowner] may subject itself to liability for punitive damages and attorney's fees if it terminates benefits nonetheless." *Vaughn*, 672 F. Supp. 3d at 190. Where benefits are denied in the face of conflicting diagnoses and prognoses, the jury is entitled to determine whether the seaman has reached MMI as well as whether the denial of benefits was arbitrary and capricious. *Tullos*, 750 F.2d at 388–89.

---

[25] *See* Breese v. AWI, Inc., 823 F.2d 100, 104 (5th Cir. 1987).
[26] *See* Guevara v. Mar. Overseas Corp., 34 F.3d 1279, 1283 (5th Cir. 1994).
[27] *See* Holmes v. J. Ray McDermott & Co., 734 F.2d 1110, 1118 (5th Cir. 1984), *overruled by* Guevara v. Mar. Overseas Corp., 59 F.3d 1496 (5th Cir. 1995), *abrogated by* A. Sounding Co., Inc. v. Townsend, 557 U.S. 404 (2009).

### III.    ANALYSIS

Plaintiff's physicians, Dr. Jolly and Dr. Davis, have both concluded that plaintiff's treatment was most likely made necessary by his slip and fall at work.[28] Defendants consulting physician Dr. Watson, in contrast, states that he "cannot relate any low back injury to this work incident." Although Dr. Watson agrees that plaintiff's "left knee contusion/abrasion/hematoma" could be related to the work incident, he concludes that this should have resolved "over 3 months," and he "would not expect this to cause chronic knee pain."[29]

Regarding whether plaintiff has reached MMI and whether his treatment has been merely palliative, Dr. Jolly has stated that "[i]f a patient has chronic pain and after the types of procedures [plaintiff] underwent, no longer has chronic pain, or has decreased pain, the treatment results in healing."[30] Dr. Jolly maintains that plaintiff's treatment "effected a physical change in his back and knee that is calculated to make his pain go away" and can "improve his ability to walk further, sit and stand longer, climb up and down stairs and ladders and improve his chances of returning to gainful employment at a laboring job."[31] For example, Dr. Jolly states that plaintiff's steroid interventions can reduce inflammation and improve damage.[32] As another example, Dr. Jolly contends that radiofrequency ablation disrupts the neuronal fibers, leading to decreased pain and "increased functionality of the facet

---

[28] R. Doc. No. 35-5, ¶ 4; R. Doc. No. 33-6, ¶¶ 9, 11.
[29] R. Doc. No. 31-9, at 8.
[30] R. Doc. No. 33-5, ¶ 8.
[31] *Id.*
[32] *Id.*

9

joints to allow for faster recovery and cure previous anatomical and symptomatic issues," which can allow for "better physical therapy and improvement of muscle mass."[33] Plaintiff argues therefore that his treatment is not merely palliative but curative as well.[34]

Dr. Watson, however, states that plaintiff has reached MMI. As the basis for this opinion, he states that plaintiff's knee injury should have resolved "over 3 months" after the accident[35]—long before defendants stopped payments.[36] He also states that plaintiff has not received benefit from his back treatments because he continues to report high levels of pain.[37] Defendant points to these conclusions and to plaintiff's treatments, "lumbar ESIs, medial branch blocks, RFA, and trigger point injections," which it characterizes as pain management, to argue that plaintiff had reached MMI and that defendant "appropriately terminated its payments of maintenance and cure benefits."[38]

The Court agrees with defendant that treatment intended to merely manage pain and thereby improve function in everyday life is palliative in nature and does not entitle plaintiff to maintenance and cure. *See Alario, L.L.C.*, 477 Fed. Appx. at

---

[33] *Id.*
[34] R. Doc. No. 33, at 14.
[35] R. Doc. No. 31-9, at 8.
[36] Plaintiff's amended complaint states that defendant stopped paying maintenance and cure after May 14, 2024. R. Doc. No. 29, ¶ 7.1. Defendant states that it terminated payments after receiving Dr. Watsons's report on June 18, 2024. R. Doc. No. 31-10, at 3. Both dates are more than seven months after the alleged September 29, 2023 accident and comfortably exceed Dr. Watson's three-month estimate.
[37] R. Doc. No. 31-9, at 8.
[38] R. Doc. No. 31-10, at 10.

187–88 (upholding a district court determination that providing steroid injections, which could help with pain management and improve overall functioning, was palliative because it could not improve her physical condition). However, Dr. Watson's report is not sufficient evidence to unequivocally conclude that plaintiff has reached MMI. Treatment for pain can be curative if it addresses the root causes of pain or if it corrects a physical abnormality. *See, e.g.*, *Barto v. Shore Const., L.L.C.*, 801 F.3d 465, 476–77 (5th Cir. 2015) (affirming the district court's determination that a surgery which removed pressure from a nerve sack was curative because it addressed the root cause of pain and eliminated the physical abnormality of pressure to the nerve sack rather than merely addressing pain as a symptom).

While Dr. Watson's report concludes that plaintiff "did not receive benefit from [the] interventions" to his back,[39] this statement does not establish that plaintiff's back pain is permanent or that other medical interventions would likewise be ineffective. Because all ambiguities or doubts are to be resolved in favor of the seaman, *see Vaughan*, 369 U.S. at 532, Dr. Jolly's opinion that treatment may "cure previous anatomical and symptomatic issues" and improve damage from the injury[40] demonstrates that issues of fact remain regarding whether plaintiff reached MMI and whether further treatment is curative. Moreover, conflicting medical opinions regarding the cause of plaintiff's injuries establish a genuine issue as to whether plaintiff is owed maintenance and cure for his injuries. Accordingly, defendant has

---

[39] R. Doc. No. 31-9, at 8.
[40] R. Doc. No. 33-5, ¶ 8.

11

not met its burden to establish unequivocally that plaintiff reached MMI before terminating maintenance and cure benefits.

With respect to punitive damages, "[c]onflicting diagnoses and prognoses of various physicians present a question to be determined by the trier of fact . . . as to whether an employer's termination of maintenance and cure benefits was arbitrary or capricious." *Gorum v. Ensco Offshore Co.*, No. CIV.A. 02-2030, 2002 WL 31528460, at *6 (E.D. La. Nov. 14, 2002) (Vance, J.) (citing *Tullos*, 750 F.2d at 388–89), *aff'd as amended*, 80 F. App'x 353 (5th Cir. 2003). Because defendant terminated payments in reliance on its own physician, while plaintiff's physicians disagreed that MMI had been reached, there are genuine issues of fact as to whether defendant terminated plaintiff's payments arbitrarily and capriciously. While defendant's reliance on Dr. Watson may not have been in bad faith, the jury is entitled to resolve this question.

## IV.     CONCLUSION

Because evidence before the Court does not unequivocally establish that plaintiff reached MMI before defendant terminated maintenance and cure benefits, genuine issues of fact exist as to whether defendant's refusal to pay was arbitrary and capricious. Summary judgment is therefore inappropriate. Accordingly,

**IT IS ORDERED** that defendant's motion for summary judgment is **DENIED**.

New Orleans, Louisiana, August 1, 2024.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE